IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


DOUGLAS ANDREW MCCLELLAN                              PLAINTIFF


v.                          No. 3:10-cv-84-DPM


STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                     DEFENDANT


## ORDER

**1.**  After Andrew McClellan's 2005 Chevy Silverado Truck was stolen from a Super 8 Motel parking lot in Illinois, his insurer State Farm refused to pay his resulting claim.  McClellan was a guest at the motel while working as a journeyman lineman electrician for his employer.  According to his complaint, McClellan left the hotel in the morning and went to work; the truck was gone when he returned in the afternoon.  McClellan promptly talked to the motel's manager, called the police, and then notified State Farm of the loss.  Motel surveillance cameras recorded the theft.  The truck has never been found.

State Farm investigated.  The company ultimately denied the claim based on some policy terms and other circumstances it believes supported a

denial.  Simply put, State Farm thinks McClellan may have had a hand in the alleged theft.

McClellan says State Farm broke the insurance contract when it denied his claim; and beyond his contract claim he asserts bad-faith and outrage claims in tort.  State Farm moves for partial summary judgment on bad faith and outrage.  Having received and considered many helpful briefs and other materials, the Court enters judgment as a matter of law for State Farm on these two claims.  It has applied Arkansas law on the substantive claims and federal law on the summary-judgment standard of review.  *Council Tower Ass'n v. Axis Specialty Insurance Co.*, 630 F.3d 725, 728 (8th Cir. 2011) (*Erie* doctrine); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55 (1986) (standard of review); *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003) (same).

State Farm's motion to supplement its sur-sur-reply, *Document No. 37*, is granted.  Although McClellan argues that the supplemental letter was produced after the discovery deadline, the intervening continuance of this case eliminates any prejudice that may have resulted from late production.

**2.** A few more facts provide important context.  After investigating the loss for about three months, State Farm informed McClellan by letter that it

was denying his claim.  Here is the policy provision that State Farm primarily relied on in its denial letter:

### SECTION IV–PHYSICAL DAMAGES COVERAGES

\* \* \*

### CONDITIONS

7.    **Concealment or Fraud**

> There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

*Document No. 15-1, at 1.*

The denial letter stated that State Farm had concluded the "[l]oss was not accidental" and that McClellan "concealed and misrepresented material facts and circumstances in connection with [his] claim." *Document No. 15-1, at 2.* McClellan allegedly misrepresented: (1) the facts leading up to the theft; (2) his financial status; (3) the fact that he had the original keys to the vehicle and had not made any copies; and (4) facts surrounding the discovery of the theft. *Ibid.*

The Court acknowledges the dispute in the briefs about references to different policies. The Court agrees with State Farm, however, that the case is unaltered by what appear to be administrative discrepancies in paperwork. There is no material disagreement about the events that fuel this lawsuit — the truck was taken; McClellan alleged it was stolen and made a claim; State Farm acknowledged and investigated the claim, later denying it on a fraud-based exception; and McClellan says the contract was triggered and State Farm should pay. To the extent technical discrepancies exist about different copies of the policy, the Court has construed them in McClellan's favor.

**3. Outrage.** Having viewed the evidence in a light most favorable to McClellan, resolved any factual disputes in his favor, and given him the benefit of reasonable inferences arising from the proof, no reasonable juror could conclude that State Farm investigated the stolen vehicle in a way intolerable in a civil society. *Anderson*, 477 U.S. at 255; *Marlar v. Daniel*, 368 Ark. 505, 509, 247 S.W.3d 473, 477 (2007).

McClellan is frustrated by State Farm's handling of the claim. The Court credits, for example, his deposition testimony that the claim process has caused a "lot of mental pressure[.]" *Document No. 15-5, at 29.* He also says

-4-

that the distractions spawned by the claim process caused him to have a work-related accident.  For summary-judgment purposes, the Court takes McClellan at his word that he is "disgusted with the whole situation" and has had "sleepless nights and pain and agony."  *Document No. 15-5 at 29.* Nonetheless, the record as a whole does not create a triable outrage claim in light of the exacting legal standard under Arkansas law.  *E.g., Faulkner v. Arkansas Children's Hospital*, 347 Ark. 941, 957, 69 S.W.3d 393, 403–04 (2002).

State Farm vigorously investigated the stolen-truck claim.  It did not, however, act beyond all bounds of decency. State Farm acted based on policy language that eliminates coverage if McClellan acted in a fraudulent manner. Rather than simply concluding McClellan was somehow involved in the theft, State Farm investigated and discovered circumstantial facts that it believed triggered a policy exclusion.  Whether State Farm can persuade a jury that it acted correctly under its contractual obligations and rights is another matter. But the Court concludes, as a matter of law, that State Farm did not act outrageously when denying the claim.

**4. Bad faith.** McClellan's contention that State Farm handled the claim in bad faith presents a closer question.  The parties have gone back-and-forth

a lot on this issue, with several recurring points of disagreement. For

example, how many keys to the truck were floating around, who had access,

and what McClellan told State Farm about these things are much disputed.

But viewing the disputed facts in McClellan's favor, there is insufficient

evidence to create a jury question on bad faith.

For several circumstantial reasons, State Farm thinks McClellan may

have been somehow involved in the theft, which is why it rested the denial

on fraud-related policy language. State Farm pointedly asked McCellan

during his deposition why he thought State Farm had acted in bad faith. The

reasons boiled down to these:

- Claim investigator Etchison had "a look of doubt in his face from the get-go" regarding the claim and the visits with McClellan "were really short and to the point";

- State Farm reviewed years' worth of personal financial information when it investigated the stolen-vehicle claim;

- State Farm viewed a "cut and dried videotape" of the theft, and McClellan was nowhere in sight;

- State Farm dragged its feet (for two weeks) in getting McClellan a rental car, which thwarted at least one opportunity to work; and

- Investigator Etchison advised McClellan to cancel his passport, which was in a lockbox (along with a treasured

-6-

duck call collection) inside the Silverado when it was stolen.
McClellan says the passport cancellation later cost him
thousands of dollars worth of work in Canada.

*Document No. 15-5, at 18–21.*

McClellan says many other things showed that his insurance company
acted in bad faith. For example, State Farm reported the possible insurance
fraud in Illinois, where the theft and alleged fraud occurred, rather than
reporting it in Arkansas, where McClellan was a resident and where the
vehicle was registered. McClellan also says State Farm told him that is was
not going to fully credit his side of events. Finally, the investigation led to a
Deputy Sheriff visiting a family farm in Georgia.

State Farm has explained in some detail why it denied the claim. The
Court has considered all this proof, as it must, in a light most favorable to
McClellan.

Has McClellan created a jury question on his bad-faith claim under
Arkansas law? No. An insurer acts in bad faith when it is "dishonest,
malicious, or oppressive in an attempt to avoid its liability under an insurance
policy." *Aetna Casualty and Surety Co. v. Broadway Arms Corp.*, 281 Ark. 128,
133, 664 S.W.2d 463, 465 (1984). Malicious conduct is characterized by

-7-

"hatred, ill will or a spirit of revenge." *Aetna*, 281 Ark. at 134, 664 S.W.2d at 465; *see also* AMI Civ. 2304 (2011). Negligence or bad judgment does not suffice. *Watkins v. Southern Farm Bureau Casualty Insurance Co.*, 2009 Ark. App. 693, at 13, 2009 WL 3400697.

Dishonest. Malicious. Oppressive. Hatred. Ill will. Vengeful. Arkansas law erects a formidable burden of proof on this kind of claim. At the summary-judgment stage, McClellan does not have to prove his case. But he must present admissible evidence creating a genuine dispute of material fact that State Farm acted in bad faith. He has not done so.

State Farm vigorously questioned and probed McClellan's claim. And McClellan has significant disagreements with how State Farm handled the claim and why the company decided not to pay. But many of the issues he raises are relevant to whether State Farm correctly or incorrectly denied the claim, not whether the company affirmatively acted in bad faith. In the Court's judgment, a reasonable fact finder could not conclude from the evidence that State Farm engaged in affirmative misconduct that crosses the dishonest, oppressive, or malicious line. *Compare, e.g., Southern Farm Bureau Casualty Insurance Co. v. Allen*, 326 Ark. 1023, 1027–29, 934 S.W.2d 527, 529–30

(1996) (lying about coverage and actively concealing coverage); *Employers Equitable Life Insurance Co. v. Williams,* 282 Ark. 29, 30–31, 665 S.W.2d 873, 873–74 (1984) (policy of delaying payment and altering customer-payment records); *Aetna,* 281 Ark. at 134, 664 S.W.2d at 465–66 (threatening to report transaction to the IRS in order to pressure insured to settle).  Hard ball is not bad faith.

* * *

**5.**   State Farm's motions to supplement and for partial summary judgment, *Document Nos. 37 & 14,* are granted.  McClellan's outrage and bad-faith claims are dismissed with prejudice.  His breach-of-contract claim, however, remains for the jury.

So Ordered.

_____

D.P. Marshall Jr.
United States District Judge

_____7 October 2011_____